People v Roman (2025 NY Slip Op 50132(U))

[*1]

People v Roman

2025 NY Slip Op 50132(U)

Decided on February 5, 2025

Criminal Court Of The City Of New York, Bronx County

Lewis, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on February 5, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York,

against
Elishabeth Roman, Defendant.

Docket No. CR-003886-24BX

Defense Counsel
Parker Wingate
The Legal Aid Society
260 East 161st Street
Bronx, NY 10451
pwingate@legal-aid.org
Bronx District Attorney's Office
Assistant District Attorney Dylan Flanders
198 East 161st Street
Bronx, NY 10451
FlandersD@bronxda.nyc.gov

Daniel M. Lewis, J.

Defendant Elishabeth Roman is charged by information with Assault in the Third Degree (Penal Law § 120.00[1])a class A misdemeanor punishable by up to 364 days jail, and Harassment in the Second Degree (Penal Law § 240.26[1]), a violation.
Defendant moves to dismiss the information pursuant to CPL § § 30.30(1) and 170.30(1)[e], arguing the People's failure to properly certify compliance with CPL Article 245's discovery mandates rendered their May 10, 2024, Certificate of Compliance (COC) invalid and Statement of Readiness (SOR) illusory.
As explained below, Defendant's motion to invalidate the People's COC is denied. However, Defendant's motion for other relief as the court deems proper is granted, CPL § 245.80 sanctions as determined appropriate by the trial court are warranted.
Pertinent Procedural History
Defendant was arraigned February 15, 2024, and the case was adjourned to March 21, 2024, for conversion and the People's COC. On March 21, 2024, the case was adjourned to May 16, 2024, for supporting deposition and COC.
On May 10, 2024, the People filed a COC and SOR. On May 16, 2024, the case was adjourned to July 1, 2024, for a COC conference. On July 1, 2024, the case was adjourned to July 15, 2024, for a COC conference. On July 15, 2024, the case was adjourned to July 30, 2024, for a Discovery Conference and again to August 16, 2024. On August 16, 2024, the case was adjourned to September 30, 2024, for a COC Conference. 
On September 30, 2024, the court set this motion schedule and the case was adjourned to December 5, 2024, and then to January 3, 2025, for decision on the motion. 
On January 7, 2024, the undersigned ordered the People off calendar, via e-mail, to contact the New York City Police Department ("NYPD") Department Advocates Office ("DAO") to ascertain whether DAO generated any documents for P.O. Malik and inform the court no later than January 17, 2024.
On January 17, 2025, the People did not comply with the Court's order and requested an additional week to ascertain whether DAO generated any documents for P.O. Malik. The court denied the People's request.
Discussion
Defendant asserts that the People's May 10, 2024, COC is invalid because the People failed to remit multiple items with their COC. Particularly, Defendant indicates that the following discovery items were not received as of the COC filing date: Video recordings of Defendant's custodial interrogation; activity log for P.O. Malik, an NYPD officer the People identified as a testifying witness; roll call logs; medical records for the complaining witness; names and work affiliation of all involved officers; Voasia lawsuit index number; body worn camera ("BWC") from Defendant's arrest and from investigations; interrogation report, and audit trials and metadata from the same; Miranda card; arrest worksheet; DAO reports; prisoner movement slip; and the DD5 index sheet.
In sum, the People's COC is valid. All omitted items were either not subject to CPL § 245.20's automatic discovery mandates, did not exist, or the People exercised the good faith and due diligence required as of the COC filing date. Nonetheless, as explained below the unique nature of custodial interrogation videos and the omission of the DAO reports warrant sanctions under CPL § 245.80.
Items not subject to automatic discovery
Contrary to Defendant's assertion, the People's omission of the NYPD roll call logs, medical records, and Voasia lawsuit does not invalidate their COC. NYPD roll call logs are not subject to the automatic discovery mandates of CPL § 245.20, and the remaining items are outside of the People's custody and control. 
Regarding NYPD roll call logs, the court is persuaded by People v. J.M.W., 83 Misc 3d [*2]1289(A) (Sup Ct, Kings County 2024), stating "[t]he roll call log is essentially a timesheet for a particular precinct and the information contained therein is not case specific " and ruling "[t]herefore, contrary to defense's assertion, the roll call log is not subject to automatic discovery" (id. at *6). Thus, the People's omission of the NYPD roll call logs from the automatically discoverable items listed in CPL § 245.20 is not a basis to invalidate the People's COC. 
Nothing contradicts the People's assertion that the medical records and Voasia lawsuit information were not in their actual possession as of the COC filing date. Nor can the People be said to constructively possess those items, as they are outside of the People's custody and control. Therefore, the omission of these items does not invalidate the People's COC.
Non-existent items
The People correctly argue that the omission of certain BWC footage and their accompanying audit trails; the interrogation report and Miranda card; the arrest worksheet; and the prisoner movement slip should not invalidate the People's COC because they do not exist. Notably, the People's representation was based not only on having requested the above items and not received them, but also on affirmative negative statements from NYPD as to the items' existence.
To be sure, defense counsel's experience having received these items in other cases understandably gives some pause to the People's denial here. But, just as each case is fact specific, so is each police investigation. Certain records may exist in one police investigation but not in others, despite the appearance of congruence between the circumstances and the corresponding police action. 
The People cannot turn over discovery items that do not exist. To the extent that good faith and due diligence are required for nonexistent items, as outlined below the People have met their burden (see People v Pondexter, 76 Misc 3d 349, 354 [Crim Ct, NY County 2022] [stating, "the People's failure to disclose this single document does not necessarily undermine a finding that they satisfied their statutory obligations when filing their certificate of compliance with discovery"]; People v Gonzalez, 68 Misc 3d 1213[A], *3 [Sup Ct, Kings County 2020] [finding that the People complied with their discovery obligations [when] items do not exist]).
Good faith / due diligence
Defendant correctly observes that P.O. Malik's activity log, the names and affiliations of involved officers, the custodial interrogation video, and the DAO reports are subject to automatic discovery and were not remitted with the People's COC. However, a holistic analysis of the People's efforts prior to filing the COC shows that they evinced the good faith, due diligence, and reasonable inquiries required for validity.
"[T]he key question in determining if a proper COC has been filed is whether the prosecution has 'exercise[d] due diligence and ma[de] reasonable inquiries to ascertain the existence of material and information subject to discovery'" (People v Bay, 41 NY3d 200, 212 [2023], quoting CPL § 245.20[2]). Although "[t]here is no rule of 'strict liability' . . . the plain terms of the statute make clear that while good faith is required, it is not sufficient standing alone and cannot cure a lack of due diligence" (id. at 212). On a motion challenging the validity of a COC, "the People bear the burden of establishing that they did, in fact, exercise due diligence and make reasonable inquiries prior to filing the initial COC" (id. at 213). "[P]ost-filing [*3]disclosure and a supplemental COC cannot compensate for a failure to exercise due diligence before the initial COC is filed" (id. at 212).
Additionally, this court agrees that the question of COC validity "calls for a holistic assessment of the People's efforts to comply with the automatic discovery provisions, rather than a strict item-by-item test that would require us to conclude that a COC is improper if the People miss even one item of discovery" (People v. Cooperman, 225 AD3d 1216, 1220 (4th Dept 2024). 
In this case, discovery was initially requested with sufficient time for response and follow up. In follow up communications, missing discovery was identified and requested with increasing urgency. Additionally, after the COC was filed, the prosecutor continued to follow up with NYPD, even repeatedly requesting confirmation of several items' nonexistence. Finally, except for the DAO reports, the People were immediately responsive to defense counsel's objections and requests, and timely remitted all items upon receipt. Using a holistic analysis, the People have evinced the good faith, due diligence, and reasonable inquiries required for COC validity here. 
Custodial Interrogation Video
Defendant's custodial interrogation video merits further attention because the People argue it is excludable from the court's consideration. First, the People assert that the statement's inadmissibility, owing to it not being noticed within 15 days of arraignment, should resolve the issue for discovery purposes. Second, the People posit that their actual ignorance of the video's existence as of the COC filing date renders it excludable per se from any COC validity analysis. 
In both respects, the People are mistaken. There is no intersection between CPL § 710.30(1)(a) notice and the People's CPL § 245.20 discovery obligations. Whether the People can use a defendant's statement during their case-in-chief is wholly immaterial to the discoverability of such a statement.
Additionally, this court disagrees that only "known material" is subject to COC validity analysis (see CPL § 245.50[1]). To be sure, the People's position finds support in decisions that are not binding on this court (see e.g. People v Kheir, 74 Misc 3d 712, 720] [Greenburgh Justice Court 2022] [holding the People's COC was valid because the prosecutor "was unaware of the recorded call" between a detective and witness as of the COC filing date]; People v Henry, 82 Misc 3d 828, 829 [Crim Ct, Queens County 2024], holding that "a prosecutor cannot certify that she 'has disclosed all known material" when she knows that she has not yet disclosed all known material"]).[FN1]
 However, this court finds recent 2nd and 3rd Department decisions, which peg COC validity to due diligence and the reasonableness of the People's inquiries instead of the People's knowledge of discoverable items, more persuasive.
In People v. Williams, 224 AD3d 998, 1003-1004 (3rd Dept 2024), Defendant's appealed conviction based on the county court's validation of the People's COC when several items, including a testifying witness' criminal history and an expert witness' CV, were known to the People but not turned over prior to the COC filing date. The appellate division upheld [*4]defendant's conviction, ruling that the county court correctly determined that the People had exercised the good faith and due diligence required prior to filing their COC, when they provided "extensive, pertinent documentation to defense" as of the COC filing date and "expressly acknowledged their obligation to provide the expert CV and criminal background information" upon receipt (id. at 1006).
In People v. Drayton, 231 AD3d 1057 (2nd Dept 2024), the 2nd Department overruled the trial judge's dismissal order which invalidated the People's COC because the People knew grand jury minutes existed but failed to remit them prior to filing a COC. Noting the People's extensive disclosure provided, acknowledgment of their obligation to remit the grand jury minutes when available, and reasonable explanation for the omission, the appellate division held that "under the circumstances, the People met their burden of establishing that prior to filing the October 2021 COC, they had exercised due diligence and made reasonable inquiries to ascertain the existence of material and information subject to discovery" (id. at 1062).
Applying the appellate divisions' reasoning, the People's ignorance of Defendant's custodial interrogation video here does not exclude it from the court's COC validity analysis. Instead, the video forms a part of the court's "holistic assessment" despite the People's lack of knowledge (People v. Cooperman, supra). As determined above, the People exercised the good faith, due diligence, and reasonable inquiry necessary for COC validity. However, the unique nature and heightened evidentiary value of this evidence merits additional analysis. 
"The prosecution shall disclose to the defendant [a]ll written or recorded statements, and the substance of all statements, made by the defendant to a public servant engaged in law enforcement activity" (CPL § 245.20[1][a]). Although nothing suggests the twenty-one enumerated categories of automatic initial discovery are in priority order, it is nonetheless telling that the legislature placed a Defendant's statements to law enforcement front and center. 
Despite the validity of the People's COC, it is inescapable that law enforcement possessed Defendant's statement and knew of its existence prior to the COC filing date. So long as the CPL tethers the People's possession to law enforcement's possession, it follows that the People's knowledge of those items constructively possessed is, to some extent, imputed to law enforcement's actual knowledge of the same. 
In this court's view, that degree should depend on factors such as whether the evidence is inherently confrontational, whether its existence is obvious to a reasonable prosecutor, and the potential evidentiary value to either party. Recorded custodial interrogation statements are unquestionably prepared for use in a criminal prosecution; memorialized by an audial and often video recording, stored in law enforcement's system of records, and can be attested to by multiple law enforcement officers; give a prosecutor the unique opportunity to use the defendant's own words against him; and significantly shape the defense's strategy. 
Therefore, the People are deemed to not only have possessed but also have known about Defendant's statement here. To that end, sanctions under CPL § 245.80 are warranted.
DAO Reports
Contrary to the doubts the People have expressed throughout this case, DAO does fall under the NYPD (see Lynch v. Guiliani, 301 AD2d 351, 353 [1st Dept, 2003] ["[I]f the CCRB finds a complaint substantiated, it forwards that determination to one of two branches of the Police Department's internal disciplinary system. These are the Department Advocate Office (DAO) and the Office of the Special Prosecutor (SPO)"]). Therefore, its reports are subject to [*5]the automatic discovery provisions of CPL § 245.20, and the People are deemed to be in possession of them if they exist.
Under the NYPD Disciplinary System Penalty Guidelines, "the DAO evaluates substantiated allegations of serious misconduct, serves disciplinary 'Charges and Specifications' against members of the service, recommends appropriate disciplinary penalties, and prosecutes disciplinary cases in the Department's Trial Room."[FN2]
 Given this, defense counsel's suspicion that DAO reports exist is well founded. However, it is unclear whether reports are generated for cases where DAO decided to take no action.
To resolve this uncertainty, the People were ordered to follow up on the existence of DAO reports twice during this case. First by J. Davila on July 1, 2024; then by the undersigned on January 7, 2025. Specifically, on January 7, 2025, the People were ordered to contact the NYPD DAO office, ascertain whether any reports existed for P.O. Malik, and report those results to the court no later than January 17, 2025. Both times, the People failed to do so.
On May 28, 2024, defense counsel informed the People she believed DAO reports existed. At the parties' appearance on July 1, 2024, the assigned assistant stated he was unfamiliar with DAO, whether DAO reports are subject to discovery, and if DAO falls within the NYPD. Further, he pledged to investigate these matters. At the parties' appearance on July 30, 2024, no representation was made regarding DAO reports. At the parties' appearance on September 30, 2024, the assigned assistant stated that no new material had been provided to him and continued to profess unfamiliarity with certain documents defense counsel requested. Finally, on January 17, 2025, the assigned assistant defied the undersigned's January 7, 2025, order to contact DAO and ascertain whether reports exist. 
Although the People cannot be penalized for not remitting nonexistent items, their lack of good faith, due diligence, and reasonably inquiries regarding the DAO reports warrants CPL § 245.80 sanctions.
Conclusion
Motion to Dismiss
For the reasons stated above, the May 10, 2024, COC is valid. Defendant was arraigned on February 15, 2024. The case was adjourned to March 21, 2024, for conversion and for COC. Thirty-five (35) days are chargeable to the People.
On March 21, 2024, the case was adjourned to May 16, 2024, for supporting deposition and for COC. On May 10, 2024, a COC and SOR were filed in this case. Fifty (50) days are chargeable to the People. The parties agree that the People are charged eighty-five (85) days from March 21, 2024, through May 10, 2024.
On May 16, 2024, the case was adjourned to July 1, 2024, for a COC Conference. The case was then adjourned for discovery conferences on July 1, July 15, July 30, August 16, September 30.[FN3]
 Zero days are charged for these adjournments. 
On September 30, 2024, a motion schedule was set and the case was adjourned to [*6]December 5, 2024 and again to January 3, 2025, for decision. Zero days are charged for these adjournments.
Accordingly, the People are charged a total of 85 days, and defendant's motion to dismiss the accusatory instrument pursuant to CPL § 30.30 is denied.
Motion for additional relief
Defendant's motion for additional relief is granted as follows:
• For failing to turn over Defendant's custodial interrogation statement, non-dismissal CPL §245.80 sanctions, to be determined by the trial court, are warranted. In this court's view, an appropriate sanction would be the complete exclusion of Defendant's statement from the evidentiary record, whereby the People would be foreclosed from using it for any purpose.
• For failing to exercise the due diligence and good faith and to make the reasonable inquiries required regarding the existence of the DAO reports, non-dismissal CPL § 245.80 sanctions, to be determined by the trial court, are warranted. In this court's view, appropriate sanctions would include jury instructions allowing an inference that the DAO reports exist; that they contain information which would adversely impact the testifying witness' credibility; and that the People willfully withheld them. The foregoing constitutes the opinion, decision, and order of the Court.
Dated: February 5, 2024
Bronx, New York
DANIEL M. LEWIS, J.C.C.

Footnotes

Footnote 1: Notably, application of the People's position, despite resolving the custodial interrogation statement issue in their favor, would invalidate the People's COC based on the numerous other items known to the People but not disclosed as of the COC filing date, as occurred in People v. Henry, supra.

Footnote 2:
www.nyc.gov/assets/nypd/downloads/pdf/public_information/nypd_disciplinary_system_penalty_guidelines_effective_09-09-2024.pdf, pg. 3 (last accessed January 24, 2025).

Footnote 3: Defendant's appearance was excused on July 30, August 16, and September 30.